**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**The Trustees of NECA-IBEW PENSION
BENEFIT TRUST FUND, et al.,**

      **Plaintiffs,**

**v.**

**PURCELL ELECTRIC COMPANY, INC.,**

      **Defendant.**                          **Case No. 09-cv-1013-DRH**

**<u>MEMORANDUM & ORDER</u>**

**HERNDON, Chief Judge:**

Before the Court is Plaintiffs' Second Renewed Motion for Default Judgment (Doc. 18) against defendant Purcell Electric Company, Inc, filed on April 22, 2010.[1]  The docket reflects that Plaintiffs filed their Complaint in this case against Defendant on December 7, 2009 (Doc. 2).  Defendant never filed its Answer or otherwise responded.  The Clerk's Entry of Default against Defendant was thereby issued on April 2, 2010 (Doc. 12).

Plaintiffs allege that their claims against Defendant arise under Sections

---

[1]  The Court twice denied without prejudice Plaintiffs' request for default judgment due to their failure to comply with the Court's Local Rule 55.1 (*see* Docs. 14 & 17).  The Court finds that in the instant Motion, Plaintiffs have met the requirements of Local Rule 55.1 (*see* Doc. 18, p. 2, ¶8; *see also* Doc. 8 - Motion for Clerk's Entry of Default, p. 2 - Certificate of Service).

502 and 515 of the Employee Retirement Income Security Act ("ERISA") of 1974, as amended and Section 301 of the Labor Management Relations Act ("LMRA"), as amended. **29 U.S.C. §§ 1132** and **1145; 29 U.S.C. § 185**. Plaintiffs further allege that on November 16, 2004, Defendant, by signing the "Letter of Assent -A," is bound by the Inside and Residential Labor Agreements ("Labor Agreements") between plaintiff Local 702 International Brotherhood of Electrical Workers, AFL-CIO ("Local 702") and NECA (Doc. 2, ¶ 10, Exs. 1 & 2). The Labor Agreements, Plaintiffs claim, obligate Defendant to file reports and pay monthly benefit contributions to Plaintiffs,[2] at the rates set forth in the Labor Agreements, for the benefit of eligible bargaining unit employees and individuals covered under the Labor Agreements, Trust Agreements and Trust Plans (which are incorporated by reference into the Labor Agreements (*Id*. at ¶ 13). Plaintiffs also allege that at all times relevant to this case, Defendant employed bargaining unit employees and eligible individuals (*Id*. at ¶ 12).[3]

Plaintiffs claim that Defendant owes partial benefit contributions for

---

[2] Plaintiffs are the Trustees of various Funds and bring this action against Defendant as fiduciaries of the Funds, pursuant to Sections 3(21)(A) and 502(g)(2) of ERISA. **29 U.S.C. §§ 1002(21)(A), 1132(g)(2)**. The Funds are the NECA-IBEW Pension Benefit Trust Fund ("Pension Fund"), the Southern Illinois Electrical Retiree Welfare Trust Fund ("Retiree Welfare Fund"), the Local No. 702 Annual Benefit Fund ("Annual Benefit Fund"), the Joint Apprenticeship and Training Committee Local Union 702 and Souther Illinois Chapter NECA ("Apprenticeship Fund"), the National Electrical Benefit Fund ("NEBF"). Plaintiffs are also comprised of the Trustees of the Labor Management Cooperation Committee ("LMCC"). The remaining two Plaintiffs are the Administrative Maintenance Fund ("AMF") and Local Union No. 702, International Brotherhood of Electrical Workers, AFL-CIO ("the Union") (*see* Doc. 19, p. 1). Plaintiffs. The Union claims it is a "labor organization" as defined by the LMRA and may therefore bring suit to enforce the terms of the Labor Agreements (*Id*. at 4).

[3] Defendant is alleged to be an employer within the meaning of Section 301 of the LMRA, as amended, 29 U.S.C. § 185, and within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5).

October 2009 and has failed to pay any contributions owed pursuant to the Labor Agreements from November 2009 through the present (Doc. 19, p. 3, Ex. 1 - Amended Affidavit of Sarah Sanderson, ¶ 2).[4]  In accordance with the provisions of the Labor Agreements and Section 502(g)(2) of ERISA, Plaintiffs further claim that Defendant is obligated to pay interest and liquidated damages on any unpaid or untimely paid contributions, as well as reasonable attorneys' fees and costs associated with the collection of contribution amounts owed (Doc. 19, p. 5). Specifically, Plaintiffs claim Defendant owes $24,393.68 in unpaid contributions for October 2009 through February 2010, $3,308.87 in interest and liquidated damages on late paid contributions for June 2009 through September 2009, and $5,016.66 in interest and liquidated damages[5] on unpaid contributions for October 2009 through February 2010 (*Id.* at 6, Ex. 1 - Sanderson Am. Aff., ¶¶ 3, 5, 6).  Plaintiffs also seek reimbursement in the amount of $8,816.50 for attorneys' fees and $460.00 in costs (*Id.*, Ex. 2 - Affidavit of Christopher Grant, ¶ 16).

Plaintiffs also allege that on May 6, 2009, Defendant (through its owner and President Carl Purcell), entered into a New Payment Agreement ("Agreement")

---

[4]  In their Complaint, Plaintiffs actually sought contributions from June 2009 through the present, but since the filing of their Complaint, Plaintiffs state that Defendant paid past-due contributions for June 2009 through September 2009.  In addition, after the filing of Plaintiff's First Motion for Default Judgment, Plaintiffs state that Defendant paid $8,000.00 towards further delinquent contributions, to which Plaintiffs applied $4,500.00 to owed contributions for February 2010 through April 2010 and the remaining $3,500.00 towards Defendant's contributions owed for October 2009 (resulting in a partial payment).

[5]  Plaintiffs note that the $5,0166.66 representing the interest and liquidated damages was calculated as of March 29, 2010 before Defendant's most recent payment was made.  Because Plaintiffs claim they charge interest and liquidated damages on unpaid contributions until they are paid, the Court recognizes that this amount may now be greater.

with Plaintiffs.  In the Agreement, Defendant admitted that it owed $77,908.10 to Plaintiffs in unpaid benefit contributions, interest, liquidated damages, attorneys' fees and costs for the months of July 2008 through March 2009 (Doc. 2, pp. 14-16, ¶¶ 58-65).[6]  Plaintiffs state that by the terms of the New Payment Agreement, Defendant agreed to pay this total amount in monthly installments and to keep current with its upcoming payments.

Plaintiffs allege that because Defendant failed to timely pay monthly contributions for the period from June 2009 through the present it is in breach of the New Payment Agreement and has failed to cure this breach (*Id*. at ¶ 63). Pursuant to the terms of the Agreement, Plaintiffs state they have the right to accelerate the balance due and that Defendant is further liable for: 1) the full amounts in unpaid contributions, interest, liquidated damages, costs and attorneys' fees remaining due under the Agreement; 2) the 4% interest on the declining balance; and 3) any amounts Plaintiffs otherwise agreement to waive (*Id*. at ¶ 64).  As such, accounting for all payments made to date, Plaintiffs state that Defendant still owes $59,908.10 in unpaid contributions under the Agreement plus $49,935.27 in interest and liquidated damages on these contributions that Plaintiffs only agreed to waive if Defendant kept current (Doc. 19, p. 7, Ex. 1 - Sanderson Aff., ¶ 7).  Plaintiffs also claim they are entitled to reasonable attorneys' fees and costs incurred in collecting

---

[6]  This amount represents $35,725.14 remaining due for the previous 84-month period with 3% interest; $36,346.30 in unpaid contributions, interest and liquidated damages from July 2008 through February 2009; $3,085.66 in unpaid contributions for March 2009; and $2,751.00 in additional attorneys' fees (Doc. 2, ¶ 61).

this amount.

In sum, Plaintiffs claim that pursuant to Defendant's obligations to timely pay benefit contributions per the Labor Agreements and the New Payment Agreement, a default judgment against Defendant should be awarded in the amount of $24,393.68 in recent unpaid contributions, $8,325.53 in interest and liquidated damages on the contributions, $9,276.50 in attorneys' fees and costs, $59,908.10 in unpaid contributions due under the New Payment Agreement, and $49,935.27 in interest and liquidated damages on those contributions (*Id*. at 8).

A party is authorized to seek a default judgment pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 55**.  Under this Rule, the Court may enter a judgment by default when the non-moving party has "failed to plead or otherwise defend" itself. **FED. R. CIV. P. 55.**  The decision to grant or deny default judgment lies within the district court's discretion and is only reviewed for abuse of discretion.  ***Homer v. Jones-Bey*, 415 F.3d 748, 753 (7th Cir. 2005)**.  "As a general rule, a 'default judgment establishe[s], as a matter of law, that defendants [are] liable to plaintiff as to each cause of action alleged in the complaint,'" as long as plaintiff's allegations are well-plead. ***Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (citing *Breuer Electric Mfg. Co. v. Toronado Systems of America, Inc.*, 687 F.2d 182, 186 (7th Cir. 1982)).**  Plaintiff must then establish a right to the requested relief sought.  ***In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004).**

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." **FED. R. CIV. P. 54(c)**.  Allegations within the complaint regarding damages are not deemed true upon the rendering of a default judgment.  ***In re Catt*, 368 F.3d at 793 (citations omitted);** ***Dundee Cement Co.*, 722 F.2d at 1323 (citations omitted)**.  Instead, the district court must determine with reasonable certainty the proper amount to award as damages to the prevailing party.  ***Id.***  Such determination can be made either based upon an evidentiary hearing or from "definite figures contained in the documentary evidence or in detailed affidavits."  ***Dundee Cement Co.*, 722 F.2d at 1323 (citations omitted); *see also In re Catt*, 368 F.3d at 793**.

Plaintiffs submit the following evidentiary items to substantiate their amount requested in default against Defendant: 1) the Amended Affidavit of Sarah A. Sanderson (Doc. 19, Ex. 1); and 2) the Affidavit of attorney Christopher N. Grant (*Id.*, Ex. 2).  In addition, attached to their Complaint, Plaintiffs submit two Letters of Assent, signed by Carl Purcell as owner and President of Defendant, and a representative of plaintiff "the Union" (Doc. 2, Exs. 1 & 2), to signify that Defendant is bound to pay benefit contributions to Plaintiffs per the Labor Agreements.  The Sanderson Affidavit substantiates the amounts Defendant owes in unpaid and delinquent contributions, liquidated damages and interest under the Labor Agreements, as well as sets forth the interest and liquidated damages rates charged by the several Funds (Doc. 19, Ex. 1 - Sanderson Aff., ¶ 4).  Attached to the

Sanderson Affidavit are several spreadsheets reflecting the itemization of the amounts owed.  The Sanderson Affidavit also states the amount remaining on the New Payment Agreement, for unpaid contributions, liquidated damages and interest.

The Grant Affidavit substantiates the amount of attorneys' fees and costs sought by Plaintiffs for their efforts in filing this suit against Defendant to collect the unpaid benefit contributions, liquidated damages and interest.  The Court finds that the stated hourly rates claimed by Grant for his own legal work and those of the other attorney and paralegals billing work for this case to be reasonable, remaining uncontested by Defendant(Doc. 19, Ex. 2 - Grant Aff., ¶ 6).[7]  Attached to the Grant Affidavit is an itemized billing statement maintained by Plaintiffs' attorneys for this case.  The Court, in reviewing the time entries, find the billed time to be reasonable and germane to the prosecution of Plaintiffs' claims against Defendant in this case.

The one problem the Court finds, however, in granting the amount in default sought by Plaintiffs relates to the New Payment Agreement.  Although Plaintiffs' Complaint states it is attached as an exhibit, it is not.  It is also not attached to the Sanderson Affidavit.  Therefore, the Court has no way to verify whether the New Payment Agreement exists, its validity, or the amount Plaintiffs' claim Defendant owes thereunder.  Accordingly, the Court will hereby **DEFER** its ruling on the instant Motion, allowing Plaintiffs an additional ten (10) days from the issuance of this Order in which to file a supplement to the motion to correct the

---

[7]  The hourly rates for the attorneys ranged from $150 to $155 per hour and $85 to $98 for the paralegal work.

noted evidentiary deficiencies.  Should Plaintiffs fail to do so or fail to adequately prove Defendant's obligation under the New Payment Agreement to the Court's satisfaction, that portion of the default judgment shall not be awarded.

**IT IS SO ORDERED.**

Signed this 20th day of October, 2010.

David R. Herndon
2010.10.20 16:36:04
-05'00'

**Chief Judge**
**United States District Court**